IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CELLCONTROL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 7:21-cv-246 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| MILL MOUNTAIN CAPITAL, LLC, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter is before the court on a motion to dismiss the First Amended Complaint for Patent Infringement ("FAC"), ECF No. 25, filed by plaintiff Cellcontrol, Inc. ("Cellcontrol"). Defendant Mill Mountain Capital, LLC ("MMC") asks the court to dismiss the FAC for failure to state a claim upon which relief can be granted. Motion to Dismiss, ECF No. 27. The allegations of infringement arise exclusively from an MMC website and video, and each side urges the court to focus its ruling on facts contained within those sources. In at least one material respect, the allegations of infringement in the FAC differ from what the video it relies upon plainly shows, rendering the allegations implausible. Further, there are insufficient facts alleged from which the court can discern a plausible claim of knowledge and specific intent necessary for a claim of indirect infringement, much less willful infringement. As such, the motion to dismiss, ECF No. 27, is **GRANTED**, albeit with leave to amend.

**I.**

On April 28, 2021, Cellcontrol sued MMC, claiming direct infringement of five Cellcontrol patents. Compl., ECF No. 1. The complaint followed a March 21, 2021, cease and

1

desist letter sent by Cellcontrol to MMC claiming, without elaboration or explanation, that MMC's "distracted driving prevention system featured at www.origosafedriver.com" infringes six Cellcontrol patents. C&D Letter, ECF No. 25-9. After MMC moved to dismiss Cellcontrol's suit, Cellcontrol filed the FAC, narrowing its allegations to indirect infringement of only two patents.[1] MMC again filed a motion to dismiss, and the issues have been briefed and argued.

The FAC alleges that Cellcontrol makes and markets distracted driving systems, FAC, ECF No. 25, at ¶ 7, and that "upon information and belief, Defendant made, used, offered for sale, and/or sold within the United States, and/or imported into the United States, a system for preventing and/or reducing distracted driving, named "ORIGOSafeDriver" (the "Accused Product"). Id. at ¶ 41. The FAC states that the "Accused Product is comprised of telematics hardware, which is installed on the vehicle, and an application program (the "OrigoSafeDriver App") executing on a mobile device. . . . The mobile device and telematics hardware are wirelessly paired and able to communicate with one another." Id. at ¶ 42.

The FAC expressly references MMC's website and a promotional You Tube video as its source of information about the MMC product, id. at ¶ 43, which are described in the ensuing paragraphs. Id. at ¶¶ 44-48. In paragraph 46, the FAC summarizes the video as follows: "In other words, the system of the Accused Product provides that the mobile device is locked and only shows a driving screen while the vehicle is in motion. While the vehicle is

---

[1] In the FAC, Cellcontrol claims indirect infringement of two patents, U.S. Patent No. 10922157 ("the '157 Patent") and U.S. Patent No. 10649825 ("the '825 Patent"). While the FAC claims indirect infringement of only these two patents, the FAC contains detailed descriptions of two other Cellcontrol patents, US Patent No. 0308421 and U.S. Patent No. 9872225, for no apparent reason.

stopped, if the driver touches the mobile device interface, the screen of the mobile device blacks out to prevent the driver to browse the mobile device." This factual averment is repeated in the claim charts for the '157 Patent. Id. at ¶ 52.

The FAC claims indirect infringement of "at least claim 1 of the '825 and at least claim 1 of the '157 Patent." Id. at ¶ 67. Claim 1 of the '157 Patent states:

> What is claimed is:
> 1. A method for preventing user interaction with a mobile device, comprising:
>    establishing, by a processor of the mobile device, a connection between the mobile device and an external control device connected with a vehicle via an application downloaded to the mobile device used to prevent user interaction with the mobile device, wherein the external control device is to transmit commands to the mobile device to prevent user interaction with one or more functions on the mobile device based on a status of the mobile device within the vehicle;
>    detecting, by an event notification service native to an operating system (OS) of the mobile device and by the application, an initiation of at least one of the functions on the mobile device;
>    sending, by the event notification service and the application via the connection, an event notification to the external control device indicative of the initiation of the at least one of the functions on the mobile device;
>    receiving, from the external control device via the connection, an action responsive to the event notification; and
>    processing the action, wherein the action causes the mobile device to prevent the user interaction with the at least one of the functions on the mobile device.

Claim 1 of the '825 Patent states:

> We claim:
> 1. A computer-implemented method for preventing user interaction with one or more functions of a mobile device, the method comprising:
>    detecting, via an application executing on the mobile device having an operating system (OS) configured to perform OS-level actions, an initiation of at least one of the one or more functions in the mobile device;
>    transmitting, via the application, an indication of the initiation of the at least one of the one or more functions to a control device located within a vehicle and connected with the mobile device via a wireless network connection;
>    receiving, from the control device over the wireless network connection, an OS-level action to perform on the mobile device to prevent user interaction with the at least one of the one or more functions, the OS-level action including one or more control device-generated human interface device (HID) signals being indicative of a keypress action; and
>    performing, by the mobile device and without any interference by the application to the one or more functions, the OS-level action to prevent the user interaction with the at least one of the one or more functions.

The FAC contains claim charts ostensibly linking the claims in the '157 Patent and '825 Patent to the MMC website and video.

## II.

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. At this stage, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Generally, a district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). It may, however, consider "documents incorporated into the complaint by reference." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), see also Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

In its motion to dismiss, MMC argues that the FAC fails to allege indirect and willful infringement of the '157 and '825 Patents. MMC contends that the FAC relies generally on the information in the MMC website and video without sufficiently linking those sources to the limitations of claim 1 of the two patents. MMC argues that "the Website and YouTube Video upon which Cellcontrol relies refutes its claims and necessitates the dismissal of this action." MMC Br. Supp. Mot. Dismiss, ECF No. 28, at 8. Further, the motion to dismiss argues that Cellcontrol's indirect infringement claim fails as it is conclusory and lacks facts sufficient to meet the elements of such a claim.

In response, Cellcontrol relies on the website and video to support its claim for infringement. "Plaintiff included several detailed charts providing a side-by-side comparison between the referenced patent claims and available information regarding Mill Mountain's Accused Product. One must only refer to the Website and YouTube Video in comparison to these claim charts to understand exactly how the Accused Product meets and/or includes all of the limitations of each particular referenced claim." Cellcontrol Resp. Opp. Mot. Dismiss,

ECF No. 31, at 5. Cellcontrol submits that it has alleged sufficient facts to plausibly state a claim for indirect and willful infringement.

### III.

The court will grant the motion to dismiss. First, the FAC contains factual allegations that appear to be contradicted by the video upon which Cellcontrol relies as factual support for its claims. In particular, both in its factual averments and the claim charts contained in the FAC, Cellcontrol alleges that "[w]hile the vehicle is stopped, if the driver touches the mobile device interface, the screen of the mobile device blacks out to prevent the driver to browse the mobile device." FAC, ECF No. 25, at ¶¶ 46, 52. In contrast to this allegation, the video shows pretty clearly that the driver may access the mobile device while the vehicle is stopped, and that the screen only blacks out once the vehicle begins to move. While the record at this point does not permit the court to determine whether this inconsistency is dispositive of the merits of Cellcontrol's infringement claims, it is clear that Cellcontrol's allegations in this respect are belied by the very evidence it asks the court to rely upon in support of it claims. In short, because the allegations of the FAC are inconsistent with the video upon which Cellcontrol founds its allegations, the court is compelled to conclude that those allegations are implausible.

### IV.

Nearly all of the paragraphs in the FAC setting forth Cellcontrol's allegations of indirect infringement are premised "[o]n information and belief." FAC, ECF No. 25, at ¶¶ 54, 57-64. Other than the few facts gleaned from the website and video, Cellcontrol's allegations of indirect infringement are entirely conclusory and run afoul of Twombly's admonition that "the

6

formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555.

Indirect infringement requires knowledge of the patents at issue. On this critical issue, Cellcontrol offers only the March 12, 2021 cease and desist letter. To be sure, that letter provided MMR notice that Cellcontrol was asserting some patent claims as of that date. But even after that date, the cease and desist letter does not provide a sufficient factual basis for the allegation that MMR knew it was engaged in infringing conduct as the letter provides no facts supporting its claim of infringement. Beyond that, by claiming infringement of six Cellcontrol patents, the cease and desist letter casts a wide net bearing no relation to the far narrower allegations of the FAC. As such, it is difficult to see how that letter alone, nonspecific yet overbroad, can provide a sufficient basis to plausibly plead knowledge of infringement by MMC.

Further, Cellcontrol's allegation of MMC's specific intent to encourage direct infringement is based on generalized marketing statements on the MMC website bearing no apparent relation to the claims in the patents. In addition, no facts are offered in support of the allegation in paragraph 61 that "Defendant knows the Accused Products is not a staple article or commodity of commerce for substantial non-infringing use."

Cellcontrol's allegations of willful infringement likewise contain no facts, and simply conclude that "[o]n information and belief, the contributory and/or induced infringement by Defendant has been willful, intentional, and deliberate with full knowledge of Plaintiff's Patents and in total disregard of Plaintiff's rights under Plaintiff's Patents." Id. at ¶ 63.

Cellcontrol alleges that MMC has engaged in two forms of indirect infringement—induced and contributory—as well as willful infringement. The court will

address Cellcontrol's allegations of induced, contributory, and willful infringement in turn.

### A. Induced Infringement.

Induced infringement is governed by 35 U.S.C. § 271(b), which states, "whoever actively induces infringement of a patent shall be liable as an infringer." Liability under § 271(b) "requires knowledge that the induced acts constitute patent infringement." Global–Tech Appliances, Inc. v. SEV S.A., 563 U.S. 754, 766 (2011). "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita–Mix Corp. v. Basic Holding, Inc., 581 F. 3d 1317, 1328 (Fed Cir. 2009). Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice. Id.

To plead a claim for induced infringement, a plaintiff must allege direct infringement by a third party and "plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" Lifetime Indus., Inc. v. Trim-Lock, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323 (Fed. Cir. 2012) (superseded on other grounds)). However, a plaintiff does not have to "prove its case at the pleading stage." In re Bill of Lading, 681 F.3d at 1339. If a complaint is well-pleaded, it may proceed even if a judge thinks actual proof of the facts is improbable and recovery is "remote and unlikely." Id. (citing Twombly, 550 U.S. at 555).

The FAC fails to allege facts sufficient to support a plausible claim that MMC knowingly induced others to infringe the Cellcontrol patents and that MMC acted with the specific intent to do so. There is no allegation as to knowledge of infringement prior to

8

Cellcontrol's March 21, 2021 cease and desist letter. Cellcontrol's nonspecific and overbroad cease and desist letter hardly suffices to allege knowledge, especially given Cellcontrol's abandonment of any claim of infringement over four patents mentioned in the letter. It is likewise difficult to see how the original suit, filed April 28, 2021, provides knowledge of infringement as it made infringement claims as to five patents, three of which subsequently were withdrawn. Moreover, Cellcontrol retreated from any claims of direct infringement in the FAC. Thus, the FAC fails to plausibly allege the knowledge element of induced infringement prior to the filing of the FAC. See Rembrandt Social Media, LP v. Facebook, Inc., 950 F. Supp. 2d 876, 882 (E.D. Va. 2013); Smart Wearable Technologies, Inc. v. Fitbit, Inc., 274 F. Supp. 3d 371, 375 (W.D. Va. 2017).

Further, even if the knowledge requirement is satisfied as of the date of the filing of the FAC, the FAC lacks facts sufficient to establish a plausible claim that MMC possessed the specific intent to induce infringement. While the requisite intent to induce infringement may be established through circumstantial evidence, Vita-Mix, 581 F. 3d at 1328, Cellcontrol alleges no facts to support its specific intent allegation beyond a few references to the MMC website and video referenced in paragraphs 59 and 60 of the FAC. These allegations, supported as they are only by vague "information and belief," are insufficient to allow the court to discern a plausible claim of specific intent to infringe. To be sure, the Federal Circuit has held that "[i]nducement can be found where there is '[e]vidence of active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.'" Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp., 785 F.3d 625, 631 (Fed. Cir. 2015) (quoting Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd., 545 U.S. 913,

936 (2005). Here, however, the court cannot discern from the sparse facts alleged a plausible claim that MMC specifically intended to induce infringement.

### B. Contributory Infringement

A party engages in contributory patent infringement if it sells or offers to sell, within the United States, material that is part of a patented invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use." 35 U.S.C. § 271(c).

> Contributory infringement occurs if a party offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c).

In re Bill of Lading Transmission, 681 F. 3d 1323, 1337 (Fed. Cir. 2012).

The FAC does not contain facts sufficient to support a claim of contributory infringement. While ¶ 61 concludes that "[o]n information and belief, Defendant knows the Accused Product is not a staple article or commodity of commerce suitable for substantial non-infringing use," there are no facts alleged to support the required elements that MMC knew that its product was "especially made or especially adapted for use infringement" of the '157 or '825 Patents or that it was "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Because there are no facts alleged to meet these elements, the FAC fails to state a claim for contributory infringement.

### C. Willful Infringement

In similar boilerplate fashion, Cellcontrol alleges that MMC engaged in willful infringement. Under the Patent Act, enhanced damages are reserved for cases of "egregious infringement behavior," designed to provide a "punitive" or "vindictive" sanction. Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103 (2016). Conduct that warrants enhanced damages is that which is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." Id.

MMC argues that simply knowing about the asserted patents but acting anyway is not enough to state a claim for willful infringement and thus is not enough to survive a motion to dismiss. Among other cases, MMC cites Susan McKnight, Inc. v. United Indus. Corp., 273 F. Supp. 3d 874, 883 (W.D. Tenn. 2017), where the court dismissed a willful infringement claim after the complaint stated "little more than conclusory allegations of knowledge and infringement." Cellcontrol contends that MMC's conduct was willful and thus egregious because MMC failed to respond to the cease and desist letter and because MMC continues to market the accused product. These facts do not rise to the level of infringing conduct sufficiently egregious to state a claim for willful infringement. As such, Cellcontrol's factually barren claim of willful infringement fails to state a claim.

### V.

The FAC represents Cellcontrol's second attempt to state an actionable claim for patent infringement. "The court has broad discretion to decide whether to grant leave to amend" when considering a Rule 12(b)(6) motion to dismiss. Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1236 (W.D. Va. 1990). Leave to amend should be freely given when justice

11

so requires. Fed. R. Civ. P. 15(a). See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (leave to amend should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the nonmoving party, or the amendment would have been futile"). There is no indication of bad faith or that prejudice would result from granting Cellcontrol leave to amend. Although the FAC lacks facts sufficient to state a claim for induced or contributory infringement, the court is not convinced that those claims are futile. As such, the court will grant Cellcontrol leave to file a Second Amended Complaint in an effort to state a claim for induced or contributory infringement. At the same time, plaintiff has had two opportunities to allege facts supporting a claim of willful infringement. As there is no apparent basis for such a claim, the court will deny the request for leave to amend the FAC to replead its claim for willful infringement as futile.

      An appropriate order will be entered.

Entered: February 28, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.02.28 09:28:14
-05'00'

Michael F. Urbanski
Chief United States District Judge